**MEMO ENDORSED**

LAW OFFICES
# KING & KING LLP
27-12 37th Avenue
Long Island City, N.Y. 11101
718-896-6554
fax: 718-275-5081
e-mail: ksilverberg@king-king-law.com

Peter M. Kutil
Karl Silverberg
_____

Brendan Hennessey

George A. King (1855-1938)
William B. King (1861-1930)

April 20, 2008

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/08

RECEIVED APR 21 2008 JUDGE KAPLAN'S CHAMBERS

**VIA Hand Delivery**

Hon. Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:     *Cyan Contracting Corp. et al. v. National Grange Mutual Insurance Company*, SDNY 07-cv-3749
Subject:     **Request for Extension of Discovery Deadline**

Honorable Lewis A. Kaplan,

King & King, LLP represents plaintiff Cyan Contracting Corp. ("Cyan"). Cyan respectfully requests an extension of the discovery deadline by 60 days, from May 1, 2008, until July 1, 2008. I have sought defendant's consent to this extension and have not yet heard back. The parties have jointly made one prior request for a 60-day extension of the discovery deadline, which the Court granted.

Cyan requests additional time for several reasons. Parties that Cyan has served with subpoena have either not yet complied or have asked for additional time to respond. The case has also become very complex as numerous third parties are in possession of relevant information. Defendant National Grange Mutual Insurance ("National") took a very long time to respond to Cyan's request for documents. The mediation ordered on January 17, 2008, did not take place until March 31st, at which point the parties' respective positions became clearer, and the need for discovery from additional third-parties became warranted.

Cyan served a request for documents upon National on November 8, 2007, with responses due December 10, 2007. After multiple requests and demands, Cyan received National's documents on March 10, 2008.

On February 25, 2008, Cyan sent a subpoena duces tecum to Cyan's process server for service through the New York Secretary of State on Integrated Construction Management ("ICM"). On the same date, Cyan also mailed a copy of this subpoena directly to ICM. ICM is National's agent, and ICM acted as National's on-site construction manager during the course of Cyan's construction projects. Presumably because of close ties between National and ICM,

National's legal counsel informed me that they represent ICM with respect to the subpoena. As of the date of this letter, I have not received a response to the subpoena served on ICM. Over the course of the last month, ICM's attorneys repeatedly told me that I can expect ICM's documents shortly, but I have not received any documents. On April 10th, I also served a subpoena for ICM's deposition testimony.

One of the most important documents that Cyan requested from National is National's accounting for National's claimed losses associated with the performance and payments bonds written on Cyan's behalf. Cause of Action #5 in Cyan's complaint is a demand for an accounting. It was not until March 26, 2008, that I received National's accounting, which document is labeled "for mediation purposes only."

In November 2007, in the hope of avoiding discovery costs, the parties agreed to meet to discuss the issues. The parties hoped to have a meeting in December 2007 but a meeting did not take place until January 31, 2008. Further, a mediation originally scheduled for February 26, 2008, did not take place until March 31st.

It was at the March 31st mediation that it became fully clear that a major aspect of the case would be extent that Cyan performed work beyond the scope of the completion contract that was entered into between Cyan and National in September 2006. A further aspect of that issue is the steps National took to recover the cost of the extra work from the project owner. The completion contract was the result of Cyan entering into a mutual termination in August 2006 with the project owner, the Dormitory Authority of the State of New York ("DASNY"), on a project known as the Bellevue DNA Lab project. This necessitated National, Cyan's surety, having to step in and complete the project. National, presumably with DASNY's approval, hired Cyan to complete the work, as Cyan is a quality contractor but needed financial support.

Cyan and National's September 2006 completion contract was for $450,000. By all accounts, the estimated amount work remaining on the Bellevue DNA Lab project was not more than $450,000. Cyan performed about $1.9 million dollars worth of work on the Bellevue DNA Lab project after September 2006. Based on National's account statement received on March 26, 2008, National claims to have financed about $2 million for work at Bellevue DNA Lab project after September 2006. Based on National's March 26th account statement, National claims to have received only $372,886 from DASNY for this work. As was made clear at the March 31st mediation, National expects Cyan to make up the shortfall.

National claims it is entitled to seek the shortfall from Cyan under Cyan's indemnity agreement with National. Cyan claims that any work beyond the $450,000 contemplated in the completion contract is extra work outside the scope of Cyan's indemnity obligations. Even assuming for sake of argument that National's position is correct, it then becomes an issue as to whether National took reasonable steps to mitigate its damages by making a claim to DASNY for what Cyan asserts is clearly extra work.

A major portion of the extra work on the Bellevue DNA Lab project resulted from design

changes to the fire suppression system. Cyan installs fire suppression systems, such as sprinkler systems, so design changes to the fire suppression directly impact Cyan. The entities that can establish the scope of the extra work Cyan performed, and the steps National and its agent ICM took to recover the costs of the extra work, are DASNY, DASNY's construction manager, who is the joint venture of TDX Construction Company and Gilbane Building Company ("TDX/Gilbane"), and DASNY's design engineer for the fire suppression redesign work, ZS Engineering P.C.

I served all three entities, DASNY, TDX/Gilbane, and ZS Engineering with subpoenas through the New York Secretary of State, and I sent facsimile or email copies directly to the entity or the entity's attorney for purposes of giving as much advance notice as possible. On April 10th I emailed a copy of the subpoena to both DASNY's in-house and outside counsel. On April 14th I faxed a copy of the TDX/Gilbane subpoena to TDX/Gilbane's attorney. On April 16th I faxed a copy of the ZS Engineering subpoena to ZS Engineering. In all cases, I followed up my transmittal with a phone call to discuss the scope of the subpoena and to try to make as reasonable accommodations as possible.

Another discovery issue involves a key witness from National's agent ICM named Aaron Clark, who was ICM's person assigned to the Bellevue DNA Lab project. Mr. Clark supposedly no longer works at ICM. I have made several requests to ICM seeking Mr. Clark's forwarding contact information and have not yet received a response.

In light of the above facts, Cyan respectfully asks the Court to extend the discovery completion date. As described above, the parties attempted in good faith to meet and mediate its issues, which meetings took place later than expected. Cyan served document requests on November 8, 2007, but did not receive responses until March 10, 2008, even though Cyan made numerous follow-up requests. National's accounting statement, a key document, was not received until March 26th. Although ICM was served and sent a subpoena on February 25th, and although Cyan has made numerous follow-up requests, ICM has still not produced documents. A key fact witness from ICM, Aaron Clark, has not yet been located. The March 31st mediation and National's March 26th accounting statement, revealed the necessity for additional discovery from third-parties, for which additional time would serve all parties.

For the reasons stated above, Cyan asks the Court to extend the discovery deadline by 60-days to July 1, 2008.

**MEMO ENDORSED**

Very Truly Yours,

Karl Silverberg (KS3075)

*Handwritten endorsement:* The parties evidently have been content to permit discovery requests to go unanswered for protracted periods without seeking court intervention and otherwise tolerated substantial delay. This is not appropriate if they seriously want the discovery. All things considered, the existing schedule is extended by 28 days. There will be no more extensions absent substantial unforeseeable reasons. Any failure to pursue discovery diligently well result in foreclosing the discovery. SO ORDERED. [signature] 4/24/08